IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CRAYTONIA LATOY BADGER                                                                     PLAINTIFF

v.                          Case No. 1:18-cv-1026

SHERIFF MIKE LOE, Columbia County,
Arkansas; DOUG WOOD, Chief Deputy,
Columbia County Sheriff Department;
GREG HAWLEY, Jail Administrator;
Columbia County Jail; DARYL ELKINS,
Medical Doctor; and KELLY BLAIR,
Investigator, Columbia County Jail                              DEFENDANTS

## **MEMORANDUM OPINION**

Before the Court is Defendants Mike Loe, Doug Wood, Greg Hawley, Dr. Daryl Elkin[1], and Kelly Blair's Motion for Summary Judgment (ECF No. 42) and a Supplement to the motion (ECF No. 51). Plaintiff has filed a response. (ECF No. 46). However, Plaintiff has not filed a response to the Supplement, and the time to do so has passed.[2] The Court finds this matter ripe for consideration.

### BACKGROUND

This is a civil rights action filed *pro se* by Plaintiff, Craytonia Latoy Badger, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") East Arkansas Regional Unit in Marianna, Arkansas. Plaintiff's claims in this action arise from alleged incidents that occurred while he was incarcerated in the Columbia County Detention Center ("CCDC") in Magnolia, Arkansas.

---

[1] Dr. Elkin is incorrectly identified in the case caption as "Elkins."
[2] *See* Local Rule 7.2.

Plaintiff filed his Complaint on April 25, 2018, in the Eastern District of Arkansas. (ECF No. 2). On April 27, 2018, Plaintiff amended his Complaint seeking immediate injunctive relief.[3] The case was transferred to the Western District of Arkansas, El Dorado Division, on May 1, 2018. (ECF No. 8).

In his Complaint, Plaintiff alleges numerous claims against Defendants arising from incidents that occurred during his incarceration in the CCDC between May of 2015 and April of 2018. Plaintiff's claims include denial of adequate medical care, discrimination, unlawful conditions of confinement, falsifying medical documentation, and inadequate responses to grievances.

Specifically, Plaintiff alleges that Defendants denied him medical care when they refused to arrange for him to have surgery to remove a knot on his head and failed to provide him with his mental health medication. (ECF No. 2, pp. 20-23). Plaintiff also alleges Defendant Elkin "falsified" documentation in his medical file in order to make it appear that Plaintiff had been seen and treated by him. *Id.* at p. 17. In addition, Plaintiff claims Defendant Elkin discriminated against him because he treated Plaintiff differently than he did his private patients who were not incarcerated. He also alleges that Defendant Wood discriminated against him when he allowed another inmate to be seen by a mental health doctor and denied Plaintiff's request to be seen the following day. *Id.* at pp. 15, 19, 23-24. Plaintiff also claims he was subjected to unlawful conditions of confinement by Defendants Elkin, Hawley, Wood, and Loe when another inmate urinated on the floor thereby "contaminat[ing] of our [environment] with his waste." *Id.* at p. 15. Plaintiff also alleges that Defendants failed to adequately respond to grievances he submitted while

---

[3] The Court construed Plaintiff's Amended Complaint to be a motion for injunctive relief. On August 15, 2018, the Court denied Plaintiff's motion. (ECF No. 29).

he was in the CCDC. *Id*.

Plaintiff sues Defendants Loe, Wood, and Hawley in both their individual and official capacities. He sues Defendants Elkin and Blair in their individual capacities only. (ECF No. 2, p. 12). He seeks damages and injunctive relief. (ECF No. 5).

On January 24, 2019, Defendants filed the instant Motion for Summary Judgment arguing that they are entitled to summary judgment because: (1) there is no proof of any personal involvement by Defendant Loe; (2) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; (3) Plaintiff was not subjected to unconstitutional conditions of confinement; (4) Plaintiff does not have a constitutional right to a grievance response; (5) Defendants are entitled to qualified immunity; and (6) there is no basis for official capacity liability because there is no unconstitutional policy implemented by Defendants that violated Plaintiff's rights. (ECF No. 42).

On April 9, 2019, Plaintiff filed a response in opposition to Defendants' motion and a separate Statement of Facts arguing that there are genuine issues of material fact which preclude summary judgment.[4] (ECF Nos. 46, 47). Plaintiff also argued that Defendants failed to address the claims of discrimination and falsifying documents. That same day the Court directed Defendants to supplement their summary judgment motion to address Plaintiff's claims regarding discrimination and the falsification of documents. (ECF No. 48).

On May 3, 2019, Defendants supplemented the summary judgment motion arguing: (1) Plaintiff was not discriminated against based on the medical care provided by Defendant Elkin;

---

[4] Although Plaintiff's Response is not verified, the Court must consider the facts set forth in his verified Complaint in ruling on the summary judgment motion. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See Roberson v. Hayti Police Dept't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

(2) Defendants did not falsify any healthcare documents and did not deprive Plaintiff of necessary medical care; (3) Defendants did not discriminate against Plaintiff by refusing his request to go to a mental health doctor; (4) Defendants are entitled to qualified immunity; and (5) there is no unconstitutional policy implemented by Defendants that violated Plaintiff's rights, and therefore no basis for official capacity liability. (ECF No. 51). To date, Plaintiff has not filed a response to Defendants' Supplement.[5]

## LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is

---

[5] The deadline for Plaintiff to respond to the Supplement was May 20, 2019. (ECF No. 50).

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

The Court will first address Plaintiff's various claims relating to denial of medical care. Then the Court will take up Plaintiff's discrimination, conditions of confinement, and inadequate grievance procedure claims. Finally, the Court will examine whether Defendants Loe, Wood, and Hawley are entitled to summary judgment on Plaintiff's official capacity claims.

### A. Denial of Medical Care

Plaintiff alleges that Defendants denied him medical care. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotation and citation omitted). To establish the

subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Serv.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation and citation omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

### 1. Defendant Loe

Plaintiff alleges Defendant Loe denied him medical care because he failed "to approve the cost of the plaintiff to have the 'knot' on his head exam[ined] and removed." (ECF No. 2, pp. 3, 21). Defendant Loe argues he is entitled to summary judgment because he was not involved with the medical care provided to Plaintiff and consequently was not deliberately indifferent to Plaintiff's medical needs.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which if proven true, would demonstrate that the named defendants violated the plaintiff's federal constitutional rights while acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Although federal courts must view *pro se* pleadings liberally, such pleadings may not be merely conclusory. The complaint must allege facts, which if true, state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions").

At the time of the events in question, Defendant Loe was the Sheriff of Columbia County. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (internal quotation and citation omitted).

In support of the instant motion for summary judgment, Defendant Elkin submitted an affidavit stating in relevant part:

> No one in the Sheriff's office, including the Sheriff, makes any decision as to whether or not [to] provide a particular medication, diagnostic testing, or medical treatment based on the cost of the medication, testing, or treatment…I do not consult with the Sheriff regarding any medical decision or treatment for an inmate under my care. I did not consult Sheriff Loe regarding medications or treatment decisions for the Plaintiff. I did not speak to Sheriff Loe about the cost of Plaintiff's medication[.]

(ECF No. 44-7). Here, there is no summary judgment evidence Defendant Loe was involved in providing medical care to Plaintiff. Accordingly, Plaintiff's claim for denial of medical care against Defendant Loe fails as a matter of law and Defendant Loe is entitled to summary judgment.

**2. Denial of Surgery**

Plaintiff alleges Defendants Wood, Hawley, Blair, and Elkin denied him medical care because they refused to authorize surgery to remove the knot on Plaintiff's head during his incarceration in the CCDC in 2015 and 2018. (ECF No. 2, pp. 20-21).

On August 22, 2015, Plaintiff submitted a sick call request concerning the knot. He was then seen by Dr. Antoon—the physician in charge of CCDC's inmates at that time—and was diagnosed with a fatty tumor. No surgery was recommended at that time.

7

After spending time in the ADC, Plaintiff was again booked into the CCDC in February of 2018. On March 2, 2018, Plaintiff submitted an inmate medical request stating he had a huge knot on the back of his head which was sometimes painful and effected his sleep. He goes on to say, "I need it remove prior to it causing other priors, or before I pull it off with my fingernails, and that way a doctor will have to finish it." (ECF No. 44-4, p. 32). As a result of this request, Plaintiff was evaluated by the CCDC medical staff on March 9, 2017. He was prescribed an antibiotic for the knot.

A few days later, Plaintiff stated, "the knot is still the same size, so the Antibotic aint working. I need this knot cut off my head, please refer me to a provider." (ECF No. 44-4, p. 33). Plaintiff was medically evaluated on April 12, 2018, by the CCDC medical staff and it was noted that, "no change in pre-existing lipoma L occipital area." On April 26, 2018, Plaintiff was taken to the Magnolia Regional Medical Center where he was evaluated, treated and released. He was diagnosed with a, "benign lipomatous neoplasm of skin and subcutaneous tissue of head, face, and neck." (ECF No. 44-4, pp. 39) The emergency room physician noted that Plaintiff had a lipoma on his posterior scalp and that Plaintiff "may pursue [an] elective procedure for removal." *Id.* at p. 25. The emergency room physician then recommended treatment with "Tylenol/Ibuprofen." *Id.*

Between 2015 and late April of 2018 at least three physicians examined the knot on Plaintiff's head and determined it was not life threatening and did not require surgery. Even Plaintiff acknowledges in one of his grievances that, "the doctors at the emergency room declined to see me about my head because it was not a emergency situation . . . [and] the injury is non-life threatening." (ECF No. 44-3, p. 15). Therefore, the Court finds as a matter of law that the knot on Plaintiff's head does not constitute a serious medical condition and that Plaintiff's claim for

denial of medical care based on a refusal to allow the knot on his head to be surgically removed must be dismissed. Moreover, the law is clear that Plaintiff's disagreement with the CCDC medical staff's course of treatment for the knot fails to state a claim for deliberate indifference. *See Meuir v. Green Cnty. Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (an inmate has no constitutional right to a particular course of treatment, and mere disagreement with the medical treatment he receives is not a basis for section 1983 liability).

Accordingly, Plaintiff's claim that he was denied adequate medical care when surgery was not approved for the knot on his head fails as a matter of law and Defendants are entitled to summary judgment.

### 3. Delay in Providing Medication

Plaintiff claims he was denied the medication Risperidone for twenty-six days while he was incarcerated in the CCDC in 2018. He alleges the medication was previously prescribed for him in the Mississippi Department of Correction prior to his transfer to the CCDC. Specifically, he alleges Defendants Elkin and Hawley failed to "obtain records, prescribe the medication or to set a appointment for plaintiff to see a mental health specialist." (ECF No. 2, p. 22).

Plaintiff also claims Defendant Blair was responsible for the delay in receiving his mental health medication because he made a statement that "our medical care is approved by the state of Arkansas" in response to a grievance Plaintiff submitted. Plaintiff claims that this statement "allow Defendant Elkins and Hawley to continue to deprive the plaintiff of his mental health medication[.]" (ECF No. 2, p. 23).

As previously stated, deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 105. Moreover, when an official denies a person treatment that has been ordered or medication that has been prescribed,

constitutional liability may follow. *See Foulks v. Cole Cnty. Mo.*, 991 F.2d 454, 456-57 (8th Cir. 1993) (finding liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain).

The summary judgment record reflects that Plaintiff did not inform any CCDC official when he was booked into the facility in February of 2018 that he was taking Risperidone. More than two weeks later, on March 2, 2018, Plaintiff submitted a grievance indicating he had not received Risperidone as prescribed. Defendant Hawley responded, stating that he was trying to help Plaintiff but that he needed the name of Plaintiff's doctor and pharmacy. On March 5, 2018, Plaintiff submitted a detainee request attaching "my old medical papers from the Mississippi Department of Correction showing the medication that I am prescribed . . . I do not know the doctor name. You will have to contact them for that information[.]" (ECF No. 44-3, p. 2). Defendant Hawley responded, indicating he had called the facility in Mississippi and that the paperwork Plaintiff had provided "says you're your medication was discontinued." *Id.* On March 19, 2018, Plaintiff submitted a medical request identifying his physician at the Central Mississippi Correctional Center. After being examined by Defendant Elkin on March 29, 2018, Plaintiff was prescribed a mental health medication and began receiving it on March 31, 2018.

Upon consideration, there is no evidence to suggest that Defendants Elkin, Hawley, or Blair intentionally withheld Plaintiff's medication from him. The record reflects that these Defendants attempted to obtain Plaintiff's records from Mississippi in a timely manner. Once these records were obtained, it was discovered that Plaintiff's prescription for the requested medication had been discontinued. Even so, Defendant Elkin still examined Plaintiff in late March of 2018 and prescribed medication for him thereafter.

Accordingly, Defendants are entitled to summary judgment regarding Plaintiff's claims for delay in providing him with his mental health medication.

### 4. Denial of Mental Health Care

Next, Plaintiff alleges Defendants Wood and Hawley violated his constitutional right to mental health treatment. Specifically, Plaintiff contends that these Defendants failed "to employ or contract with a Mental Health Specialist to provide counseling and treatment for the plaintiff and other mental ill inmates in their custody." (ECF No. 2, p. 22).

Although Plaintiff has a constitutional right to adequate health care, he does not have the right to health care of his choice—i.e. a mental health specialist. *See Meuir*, 487 F.3d at 1118-19 (holding that an inmate has no constitutional right to a particular course of treatment). The record reflects that all decisions regarding medical care, including mental health, are left to the professional medical judgment of the CCDC's contract physician Dr. Elkin. (ECF No. 44-1, p. 1). Plaintiff has not presented any evidence to show that Defendants Wood or Hawley were personally involved in the decision as to whether he should have been evaluated by a mental health specialist. Instead, the record shows that Plaintiff was examined by Defendant Elkin and prescribed mental health medication in March of 2018. The record further reflects that Plaintiff underwent a forensic mental evaluation on April 5, 2018 and was found not to have any mental disease or defect. Instead, he was diagnosed as malingering.[6]

Accordingly, Plaintiff's claims against Defendants Wood and Hawley for denying him mental health care fail as a matter of law.

---

[6] "Malingering" is defined in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, as the intentional production of false or exaggerated physical or psychological symptoms motived by external incentives.

### 5. Falsifying Medical Records

Plaintiff further alleges that Defendant Elkin falsified his medical records at the CCDC in order to make it appear that Plaintiff was receiving medical care when he was not. Plaintiff contends this caused him to be denied medical care.

Upon consideration, the Court finds that the summary judgment record does not support Plaintiff's claim. Plaintiff submitted numerous medical requests during his incarceration in the CCDC. The CCDC's medical staff read over each of his requests and addressed his health concerns through notations on his medical records by a CCDC staff member or Defendant Elkin, or by physical examinations by the CCDC's medical staff or Defendant Elkin. Plaintiff appears to contend that any notation on a medical record when Dr. Elkin did not physically see him is a falsified record. For example, Plaintiff states in his Complaint that on March 9, 2018, "another nurse associated with Defendant Elkins met with the plaintiff at his cell door." (ECF No. 2, p. 13). However, Plaintiff later denies being treated by CCDC medical staff, stating that Defendant Elkin "falsified documents by including that he visit and examed the plaintiff on or about March 2, 2018 and March 9, 2018, failing to exam plaintiff injury for more than 25 days after being notified[.]" *Id.* at p. 21.

A review of these medical records reveals that they do not state that Defendant Elkin physically examined Plaintiff. The record from March 9, 2018 simply notes "Keflex" meaning that Plaintiff was prescribed the antibiotic, which Plaintiff admits he received. Additionally, in a medical request from April 2, 2018, Plaintiff states that he was seen by Defendant Elkin on March 29, 2018, and the medical staff noted that there was "no change in care plan indicated at this time." Again, this record does not indicate that Defendant Elkin saw Plaintiff on April 2, 2018.

Finally, Defendant Elkin submitted an affidavit in support of the motion for summary judgment stating, "I do not falsify healthcare documents. I did not falsify any healthcare document regarding the medical treatment of Mr. Badger." (ECF No. 53-1, p. 2). Plaintiff has not offered any evidence to contradict these statements. Moreover, as discussed throughout, the record reflects that Defendant Elkin and the CCDC's medical staff provided Plaintiff with adequate medical care during his incarceration.

Accordingly, Defendant Elkin is entitled to summary judgment on Plaintiff's claim that he falsified documents in order to deny Plaintiff medical care.

### B. Discrimination

Plaintiff alleges Defendant Elkin discriminated against him by denying him the same care and treatment that he provides to his non-incarcerated patients. (ECF No. 2, p. 23). He also claims Defendant Wood discriminated against him when he refused Plaintiff's request to go to a local mental health doctor and then approved another inmate's request for mental health treatment the next day. *Id.* at p. 19. The Court construes Plaintiff's allegations of discrimination as claims for violation of his right to Equal Protection.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. The purpose of the Equal Protection Clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 611 (2008) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause. *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).

An equal protection claim may be established in two ways. The first requires a plaintiff to "show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Washington v. Davis*, 426 U.S. 229, 239-40 (1976). If the claims do not involve a suspect classification, a plaintiff can establish an equal protection "class of one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564; *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009). To prevail under this theory, a plaintiff must show that (1) he or she is a member of an identifiable class; (2) he or she was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Olech*, 528 U.S. at 564.

### 1. Defendant Elkin

Plaintiff alleges Defendant Elkin discriminated against him by denying him the same care and treatment he provides to his non-incarcerated patients. As discussed below, this claim fails as a matter of law.

First, the law is clear that "[n]either prisoners nor indigents constitute a suspect class[.]" *Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir. 1998). Second, inmates and non-incarcerated individuals are not similarly situated. It has long been recognized that lawful incarceration brings about necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying the penal system. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Finally, Defendant Elkin has submitted an affidavit stating, "I do not discriminate in my medical practice. I do not discriminate between inmates and non-inmates. I treat all patients equally, and I use my best medical judgment in treating each patient, whether they are incarcerated or not." (ECF No.

53-1, p. 2). Plaintiff has not submitted any evidence to support his allegations of discrimination or contradict Defendant Elkin's affidavit.

Accordingly, Defendant Elkin is entitled to summary judgment on Plaintiff's Equal Protection claim against him.

### 2. Defendant Wood

Likewise, Plaintiff's claim that Defendant Wood discriminated against him when he allegedly allowed another inmate to see a mental health specialist also fails as a matter of law.

Although Plaintiff and the other inmate were both incarcerated at the CCDC, this does not necessarily mean they were similarly situated with regard to their specific mental health conditions. Plaintiff has not submitted any evidence to show that he and the other inmate suffered from similar medical issues. As previously discussed, Plaintiff was examined by Defendant Elkin who prescribed mental health medication for him. Then, on April 5, 2018, Plaintiff underwent a forensic examination where he was found not to have any mental disease or defect. Moreover, the specific courses of treatment for inmates at the CCDC were determined by Defendant Elkin, not Defendant Wood, and Plaintiff provided no evidence that Defendant Wood intentionally discriminated against him.

Accordingly, Defendant Wood is entitled to summary judgment on Plaintiff's Equal Protection claims.

### C. Conditions of Confinement

Plaintiff alleges he was subjected to unlawful conditions of confinement when another inmate was "wasting urine and other forms of body fluid in the environment causing a health hazard to himself and others." Plaintiff claims that Defendants Elkin, Hawley, Woods, and Loe

15

were aware of this situation and "did not respond or take any action to prevent [the inmate] from . . . contamination of our envoirment with his waste." (ECF No. 2, p. 15).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Consequently, jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels*, 382 F.3d at 875 (internal quotation and citation omitted). "The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

"[I]nmates are entitled to reasonably adequate sanitation [and] personal hygiene . . . particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (quotations and citations omitted); *see also Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (holding that where plaintiff was subjected to an "overflowed toilet in his cell for four days," such "allegations regarding 'raw sewage' d[id] not rise to a level of constitutional significance' because plaintiff 'did not allege that he was exposed to disease or suffered any other consequences of the exposure.'").

Although reasonably adequate sanitation is a basic identifiable human need, the Court finds no evidence that Defendants Elkin, Hawley, Woods, or Loe were deliberately indifferent to Plaintiff's health or safety. Plaintiff has not presented any evidence regarding how long the urine and other bodily fluids were "in the environment." The limited amount of time Plaintiff may have been exposed to any alleged unclean and uncomfortable conditions is not enough to establish unlawful conditions of confinement. Moreover, Plaintiff does not allege that he suffered any specific health issues or other consequences as a result of urine and bodily fluids in the environment.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's conditions of confinement claim.

**D. Grievances**

Plaintiff alleges throughout his Complaint that his constitutional rights were violated when Defendants failed to adequately respond to his grievances.

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the grievance procedure is not actionable under § 1983." *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts. *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). In the instant case, Plaintiff has been able to effectively seek redress for alleged constitutional violations though filing this action. Consequently, Defendants are entitled to summary judgment on Plaintiff's claim that they failed to respond to his grievances.

### E. Official Capacity Claims

Plaintiff also sues Defendants Loe, Wood, and Hawley in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against these Defendants are treated as claims against Columbia County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish any liability on the part of Columbia County under section 1983, "[P]laintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or

18

procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff alleges the CCDC's:

> policy and procedures not to employ a full time nurse at the facility violates the plaintiff constitutional rights, because the fact that doctor comes 1 time a week is critical to the plaintiff and others for the remaining 6 days that he does not come. The procedures also extends to other duties of a full time nurse, such as the prevention and spreading of Tuberculosis (TB.) A full time around the clock nurse will prevent the spreading of T.B. because inmates can be checked and monitor for it upon their arrival. The current once a week doctor does not attempt to control, prevent or monitor TB, because he does not check for it[.]
>
> the [CCDC's] procedures to rely on the court to order a mental evaluation is the same a receiving mental health treatment violated the constitutions. The defendant fail to employ or contact with a mental health specialist to counsel and treat the plaintiff mental illness violates the constitution, because the constitution require the defendant to provide the plaintiff or other inmates with mental health treatment. The constitution does not say that inmates must wait for the court to issue a order for a mental evaluation. If that was the case, the defendants would be relieved from all duties associated with a inmate mental health.

(ECF No. 2, pp. 4, 6).

It is the policy of the CCDC that Detention Officers observe the detainees visually for obvious signs of injury or illness and that detainees be provided access to necessary health care through routine sick call procedures. (ECF No. 44-5). In addition, it is CCDC's policy that all sick calls be conducted by a licensed medical professional. In accordance with the policy, employees and officials of the CCDC are prohibited from interfering with a detainee's access to sick call. *Id.* It is CCDC policy that health care services are to be managed in accordance with accepted health care policies and procedures. *Id.* Further, only approved medications are to be dispensed in the CCDC. *Id.*

In the instant case, Plaintiff has not established that Defendants failed to treat any serious medical condition from which he was suffering or that Defendants were deliberately indifferent in

19

regard to providing him with his mental health medication. It necessarily follows that Plaintiff cannot establish that the CCDC policy or custom of not employing a full-time nurse or physician for mental or physical treatment contributed to any violation of his constitutional rights. Instead, the record reflects that Columbia County had policies in place to provide adequate medical care to Plaintiff during his incarceration.

Accordingly, Defendants Loe, Wood, and Hawley are entitled to summary judgment on Plaintiff's official capacity claims.[7]

## CONCLUSION

For the above reasons, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 42) should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims against all Defendants are **DISMISSED WITH PREJUDICE**. A judgment of even date consistent with this opinion shall be entered.

**IT IS SO ORDERED**, this 1st day of August, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[7] Because all of Plaintiff's claims have been dismissed on the merits, the Court finds that it need not consider whether Defendants are entitled to qualified immunity.